UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

====================================

UNITED STATES OF AMERICA,

                              Plaintiff,

                                                      **DECISION AND ORDER**
         v.                                               20-CR-142-A

HECTOR CORDERO,
                              Defendant.

====================================


         The defendant, Hector Cordero, who is charged in an Indictment with serious

drug-trafficking and firearms offenses, is before the Court pursuant to 18 U.S.C. § 3145

on an appeal of the denial of his motion for pretrial release by Magistrate Judge H.

Kenneth Schroeder, Jr.  The charges in the Indictment arise from seizures during the

execution of two or three search warrants of more than a kilogram and a half of cocaine,

more than a half of a kilogram of marijuana, a loaded .45 caliber/410 shotshell revolver,

the lower receiver of another handgun, three mechanical presses that are typically used

to form kilogram-sized bricks of cocaine, more than $30,000 of currency, a money

counter, a digital scale, and drug-packaging materials.

         If defendant Cordero is convicted of the offenses with which he is charged in the

Indictment, he faces penalties that include a 5-year mandatory minimum sentence for a

cocaine offense and a 5-year mandatory minimum sentence for a firearms offense.  The

5-year mandatory minimum sentence for possessing a firearm in furtherance of drug-

trafficking activity in violation of 18 U.S.C. § 924(c) would run consecutive to other terms

of imprisonment the Court imposes, *see* 18 U.S.C. § 924(c)(1(D)(ii), giving rise to at

least a 10-year sentence of imprisonment if the defendant is also convicted of the 5-year mandatory minimum cocaine offense[1].  *See Dean v. United States*, 137 S. Ct. 1170 (2017) (sentencing court should consider the § 924(c) mandatory minimum sentence when calculating appropriate sentences for predicate offenses).

Defendant Cordero's criminal record includes a federal felony conviction for racketeering conspiracy based upon his role in drug-trafficking and the shooting of two rival drug dealers.  He was subject to pretrial detention for more than 37 months during that case.  S*ee United States v. Cordero*, No. 10-CR-189, Dkt. Nos. 5, 11, 13, *and United States v. Rodriguez*, No. 09–CR–331 Dkt. Nos. 488, 702 (2012 WL 6690197 (W.D.N.Y. Dec. 21, 2012)), 973.  The defendant also has two New York felony drug convictions and other arrests that involved cocaine, crack cocaine, heroin, and marijuana.  He was arrested two times for conduct occurring while he was released on bail while state charges were pending, and one of these arrests was also when he was on parole.  He has a parole violation on his record.  At one time, he was a member of a violent, drug-dealing street gang in the City of Buffalo known as the 10th Street gang. *Rodriguez*, No. 09–CR–331-A, Dkt. No. 962, ¶¶ 29-51 (sealed Presentence Investigation Report).

Defendant Cordero argues that he should be released to home incarceration at a relative's home, subject to electronic monitoring and conditioned on a relative posting a different residence valued at approximately $110,000, other relatives posting cash of $10,000, and an unidentified relative signing an unsecured financial bond in an

---

[1] Count 8 of the Indictment charges the defendant with possessing a loaded .45 caliber/410 shotshell firearm seized from a bucket in the shed at 7 Roanoke Parkway, Buffalo, in furtherance of charged drug-trafficking offenses.  Count 10 charges him with possessing a lower receiver of a firearm, *see* 18 U.S.C. § 921(a)(3), found in the safe at 1042 Grant Street, Buffalo, in furtherance of charged drug-trafficking offenses.

unspecified amount.  The defendant argues that these substantial conditions of pretrial release are more than sufficient to rebut the statutory presumptions of danger to the community and flight risk in 18 U.S.C. § 3142(e)(2)(A), (e)(3)(A) and (e)(3)(B) that arise because of his relatively recent serious criminal activity and because of the serious drug-trafficking offenses and firearms offenses with which he is charged.  The defendant argues that the evidence the United States relies upon will be suppressed on Fourth Amendment grounds, and he stresses that his satisfactory compliance with the requirements of a prior three-year term of federal supervised release demonstrates that he is unlikely to pose a danger to the community or a serious risk of flight requiring pretrial detention.

For the reasons that follow, and primarily due to the seizures of tools of the trade of a major drug dealer, combined with defendant Cordero's history of recidivism and serious drug-trafficking activity while on state bail and parole, the Court concludes that none of the available conditions of release will reasonably assure the safety of the community.  Accordingly, upon *de novo* review of the September 8, 2020 Order of Detention of Magistrate Judge Schroeder pursuant to 18 U.S.C. § 3145, the Court orders that the defendant be detained pending his trial.

## DISCUSSION

To determine whether there are available conditions of release that will reasonably assure the safety of the community and a defendant's appearances as required, the Court must consider the factors in 18 U.S.C. § 3142(g):

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or

involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

**Nature and Circumstances of the Offenses.**  Defendant Cordero is charged with two counts of possession of a firearm in furtherance of drug-trafficking offenses, one of which is based upon the seizure of a loaded .45 caliber/410 shotshell Taurus revolver ("The Judge") and ammunition from a shed at 7 Roanoke Parkway, Buffalo. The defendant had been observed at the 7 Roanoke Parkway residence, and the loaded firearm and ammunition were in a bucket near two mechanical presses that are commonly used to press cocaine or other controlled substances into kilogram-sized bricks, and also near a locked safe that contained approximately 1.7 kilograms of cocaine.

A key that was used by law enforcement officers to open the safe in which the 1.7 kilograms of cocaine were stored was seized from the master bedroom of the 7 Roanoke Parkway residence.  The residence also contained more than $30,000 of currency, some personal and business papers that belong to defendant Cordero and that pertain to his business at 1042 Grant Street, Buffalo.

The same key that was seized from 7 Roanoke Parkway later opened another safe at defendant Cordero's 1042 Grant Street business when law enforcement officers searched those premises.  Officers seized more than half a kilogram of marijuana, some of it from the locked safe, along with a digital scale with white powdery residue on it, drug packaging materials with white powdery residue, and the lower receiver of another firearm.  Law enforcement officers also seized a kilo-press similar to the two presses seized at 7 Roanoke Parkway.

**Weight of the Evidence.**  The evidence seized during execution of the search warrants is circumstantial.  For example, as far as the Court is aware, there is no eyewitness testimony presently available from anyone who saw defendant Cordero possess a firearm while trafficking in controlled substances.  Nevertheless, circumstantial evidence is potentially every bit as reliable and persuasive as direct evidence, and a jury's guilty verdicts can rest entirely on circumstantial evidence.  *See e.g.*, *United States v. MacPherson*, 424 F.3d 183, 190 (2d Cir. 2005).  Here, the fact that the same key that was found in the master bedroom of 7 Roanoke Parkway opened each of the two safes from which the contraband evidence was seized, in light of the other evidence linking the defendant to the locations of the safes in the shed at 7 Roanoke Parkway and in his business premises at 1042 Grant Street, gives rise to a

strong inference that he controlled access to the places where the firearms, controlled

substances, and drug-trafficking paraphernalia were located.  In the same vein, the fact

that the two kilo-presses seized from 7 Roanoke Parkway were similar to the one seized

from 1042 Grant Street gives rise to an inference that the defendant had control of each

of the presses.  Given the amount of controlled substances that were seized, the other

evidence that the defendant was engaged in major drug-trafficking activity, and that he

committed serious firearms offenses by possessing firearms in furtherance of the

controlled-substance offenses with which he is charged, the Court concludes the weight

of the evidence against him is strong.

On the other hand, defendant Cordero argues that the evidence is not nearly as

strong as it might seem.  He points out that 7 Roanoke Parkway is his girlfriend's

residence, and he told U.S. Probation that he lives with an aunt and uncle at 10 Arnold

Street in Buffalo.  That may be so, but it does little to rebut the reasonable inferences to

be drawn from the fact that the key found in the master bedroom of 7 Roanoke Parkway

fit the safe in the shed behind the residence and the other safe at his business, not to

mention the presence of his personal papers and business papers at the residence.

The defendant also suggests that he will eventually show that the evidence

proffered against him should all be suppressed because of law enforcement officers'

bad faith violation of the Fourth Amendment's protection against unreasonable searches

and seizures.  But the arguments that the defendant suggests are available to him to

support a suppression motion are too conclusory to merit serious consideration.

For example, the defendant concludes that the 7 Roanoke Parkway warrant

lacked essential particularity, but he does not explain how, except to note that the shed

at that address was not within the scope of the warrant for 7 Roanoke Parkway.  But

when law enforcement officers were executing the warrant, "[a] law enforcement K-9

alerted to presence of narcotics on the shed . . . [and the] . . . officers applied for and

were granted legal authority to search the shed."  Dkt. No. 1, p. 3, ¶ 6.  In any event, the

defendant does not directly challenge the validity of the search warrant for 1042 Grant

Street, and he disregards the likely inevitable discovery of the lower receiver of a

handgun in the safe at 1042 Grant Street.  Because that firearm was seized along with

controlled substances and other drug-trafficking paraphernalia, the evidence that he

violated 18 U.S.C. § 924(c) by possessing that firearm in furtherance of drug-trafficking

offenses remains strong even if his conclusory speculation that he will succeed in

suppressing evidence from the shed behind 7 Roanoke Parkway proves to be correct.

**History and Characteristics of Defendant Cordero.**  Defendant Cordero is 32

years of age and is a lifelong resident of Buffalo, New York.  He was adopted at the age

of two and was raised by his maternal grandmother.  He has one child, a daughter, who

resides with her mother and two stepsiblings at the 7 Roanoke Parkway residence that

was the subject of one of the searches underlying the defendant's current charges.  He

is involved in raising the three children, although he denied living at 7 Roanoke Parkway

when interviewed by a U.S. Probation Officer for a Pretrial Services Report.  He has

other relatives in the community who are willing to post a residence and $10,000 cash

as security to assure his appearances in Court as required and his lawful conduct if he

is granted pretrial release.

The defendant has a G.E.D.  He had been working part-time as a furniture

installer while also operating his own hardware discount store named "For the Low" at

1042 Grant Street before his arrest and detention.  He can return to these gainful

activities if released on conditions that would permit it.

Defendant Cordero has a history of substance abuse from when he was much

younger.  He had mixed success with court-mandated drug treatment, and he

successfully completed some inpatient treatment.  He admits some marijuana use since

completing his term of federal supervised release.

The defendant takes no prescription medications.  However, he claims without

supporting documentation that he suffers from sleep apnea, high blood pressure, and

high cholesterol.  He may be overweight.

Defendant Cordero's first serious arrest was for burglary and cocaine at age 19.

He resolved the arrest by entering a guilty plea to disorderly conduct.  While that case

was pending, he was arrested for the New York offense of Criminal Possession of a

Controlled Substance, a Class B felony under New York law.  And while on bail for that

charge, the defendant was arrested again for drug-trafficking and was eventually

convicted of Attempted Criminal Possession of a Controlled Substance, 4th Degree.

He failed a residential drug treatment program, was then later arrested again while on

parole, and the charges leading to that arrest were incorporated into the federal

racketeering charges before this Court that involved his role in the activities of the 10th

Street gang.

Defendant Cordero's federal racketeering conspiracy conviction stems primarily

from his drug-trafficking and his role in other 10th Street gang members' shooting of two

rival drug dealers with an AK-47 rifle to drive the rivals from territory claimed by the 10th

Street gang.  The defendant pretended to be a crack addict and purchased crack from

the rival drug dealers while scouting the scene of the shooting for signs the rivals had weapons.  He was sentenced by this Court to 86 months imprisonment, which I later prospectively reduced to a time-served sentence of  nearly 69 months in custody after a retroactive change of applicable Sentencing Guidelines.  After his release from federal prison in November of 2015, the defendant served a three-year term of supervised release with no violations.  If convicted of the offenses with which he is presently charged, it appears that the defendant is likely to be in Criminal History Category II.

**The Nature and Seriousness of the Danger.**  Defendant Cordero's possession of the powerful loaded handgun seized from the bucket in the shed at 7 Roanoke Parkway, the lower receiver of another handgun from the safe at 1042 Grant Street, the three kilo-presses, the money-counting machine, together with his possession of significant quantities of cocaine and marijuana, together tend to show the defendant was engaging in dangerous drug-trafficking activity.  The loaded handgun, three kilo-presses, and money-counting machine that he possessed tend to show that the defendant was buying, diluting and selling kilogram quantities of controlled substances while armed.  The § 3142(e)(2) and (e)(3)(A) and (e)(3)(B) presumptions of danger were adopted precisely because  "[i]t is well known that drug trafficking is carried on to an unusual degree by persons engaged in continuing patterns of criminal activity.  Persons charged with major drug felonies are often in the business of importing and distributing dangerous drugs, and thus, because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism."  S.Rep. No. 225, 98th Cong., 2d Sess. 20, reprinted in 1984 U.S.Code Cong. & Admin. News 3182, 3203.  The defendant's alleged multiple mandatory-minimum offenses charged in the

Indictment were less than five years from his November 2, 2015 release from federal

prison because of his participation in a violent, drug-dealing racketeering enterprise.

*See* 09-CR-331-A, Dkt. No. 1922.  The lengthy sentence he served for that conduct was

imposed, in part, because he aided and abetted violence while on bail when he helped

fellow 10th Street gang members shoot rival drug dealers with an AK-47 rifle in 2006.

There is no evidence that the defendant has personally committed acts of violence, but

his record of drug dealing while on bail and on parole, even though some of it was 10 or

15 years ago, *see* 10-mj-00006, Dkt. No. 1; Dkt. No. 09-CR-331-A, Dkt. No. 962, ¶¶ 42-

43, 45, 47-49, 50 (sealed Presentence Investigation Report), coupled with the evidence

that he has now returned to armed drug-trafficking, *see United States v. Rodriguez*, 950

F. 2d 85, 88 (2d Cir. 1991); *United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985)

(danger to the community includes "the harm to society caused by [the significant risk of

continued] narcotics trafficking"), establishes by the standard of clear and convincing

evidence that the defendant poses a significant danger to the community if he is not

detained.

> To the defendant's credit, he has the support of members of his extended family.

A cousin is willing to post a residence at 79 California Street, Buffalo, New York, with an

estimated market value of $110,000 as collateral for the defendant's pretrial release.

Other relatives would post $10,000 cash and sign another unsecured bond in an

unspecified amount.  This security, combined with home incarceration on electronic

monitoring with other relatives, might, in light of the defendant's having successfully

served his three-year term of federal supervised release since he was released in

November of 2015, adequately assure his appearances in Court and as otherwise

required[2].

      However, the economic security defendant Cordero's relatives could post

"deter[s] flight, not danger."  *United States v. Ferranti*, 66 F.3d 540, 543 (2d Cir. 1995)

(citing *Rodriguez*, 950 F.2d at 89).  Unfortunately, the defendant's somewhat recent

time in federal prison for an offense committed partially while he was on bail and parole,

was not enough to dissuade him from armed drug trafficking.  Based upon the evidence

before the Court, the defendant has not met his burden of production to show that home

incarceration in his relative's residence while subject to electronic monitoring, and upon

pain of the forfeiture of other relatives' residence and cash, will reasonably mitigate the

particular risk of pretrial recidivism and drug trafficking that he poses.  *See e.g.*, *United

States v. English*, 629 F.3d 311, 322 (2d Cir. 2011) (noting the risk of continuing drug

trafficking by telephone).  Given the statutory presumptions of danger, the Court finds

that the United States has shown that home incarceration even while subject to

electronic monitoring does not adequately protect the community from the risks of drug-

trafficking the defendant poses.

      While defendant Cordero suggests that the evidence of his dangerousness to the

community is likely to be suppressed for a bad faith violation of the Fourth Amendment,

it bears emphasis that the Court's assessment of the danger he poses is not an

assessment of the likelihood of his being convicted and punished during a trial.  The

---

[2]  Defendant Cordero argues that the $30,000 cash seized from 7 Roanoke Parkway is from his "successful" and "prosperous" store at 1042 Grant Street. Dkt. No. 16, p. 2.  No other substantial assets connected to the store show up in financial disclosures he made during his Pretrial Services interview, and the defendant declined to estimate the value of the business during the interview because he has only operated it for approximately one year.  Because the defendant is being detained pending trial because he is a danger to the community, the Court does not decide whether the economic security the defendant offers to post to assure his appearances as required is sufficient to overcome the risk of flight that arises because of the strength of the evidence against him and the severe penalties he faces.

defendant is presumed innocent.  18 U.S.C. § 3142(j).  The Court's practical

assessment of his dangerousness pursuant to § 3142(e) serves the compelling

regulatory purpose of determining whether his is one of the few serious cases where

detention is necessary to protect the public or individuals from future crime that he may

commit while on release.  *United States v. Salerno*, 481 U.S. 739, 747-48 (1987).

Given this context, the Court finds the defendant's suggestion that the evidence against

him will be suppressed in order to deter future police misconduct has little merit.  *See*

*e.g.*, *United States v. Barner*, 743 F. Supp. 2d 225, 230 (W.D.N.Y. 2010) ("Some courts

have held that evidence which is being suppressed for purposes of trial may

nevertheless be considered in evaluating the 'weight of the evidence' factor under

§ 3142(g).")  The defendant is subject to three statutory presumptions of dangerousness

because of his serious criminal record and because of the serious criminal offenses with

which he has been charged by a Grand Jury.  18 U.S.C. § 3142(e)(2), (e)(3)(A) and

(e)(3)(B).  Because he has not been able to rebut the statutory presumptions of danger

to the community, and because the Court finds by a standard of clear and convincing

evidence that the available conditions of release will not adequately protect the

community, he must remain in pretrial detention pending his trial.

**The COVID-19 Pandemic.**  Defendant Cordero has also argued that the Court

should weigh an increased risk of serious harm he faces if he contracts COVID-19 while

in pretrial detention because he suffers from the co-morbidity of high blood-pressure.

The Court has considered the unprecedented risks posed to individuals and the public

by the rapidly evolving pandemic, as well as the greater risks to individuals who are in

custody.  Nevertheless, despite increased health risks that the defendant may face

while detained, the Court concludes he must be detained pending trial unless concrete evidence of changed circumstances warrant reconsideration by the Court.

## CONCLUSION

For the reasons stated above, pursuant to 18 U.S.C. §§ 3142(e) and 3145, it is hereby:

**ORDERED** that, pursuant to 18 U.S.C. § 3142(i)(2), the defendant, Hector Cordero, is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; and it is further;

**ORDERED** that, pursuant to 18 U.S.C. § 3142(i)(3), the Attorney General shall afford the defendant a reasonable opportunity for private consultation with counsel; and it is further

**ORDERED** that, pursuant to 18 U.S.C. § 3142(i)(4), upon order of a court of the United States or on request of an attorney for the United States, the person in charge of the corrections facility in which defendant is confined shall deliver the defendant to the United States Marshals Service for the purpose of an appearance in connection with a court proceeding; and it is further

**ORDERED** that, pursuant to 18 U.S.C. § 3142(j), the foregoing is without prejudice to the defendant's right to the presumption of innocence, or to his right, pursuant to 18 U.S.C. § 3142(f), to seek reconsideration of this Decision and Order based upon changed circumstances.

**IT IS SO ORDERED.**


_s/Richard J. Arcara_
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:  November 10, 2020